**Gomez Trial Attorneys**
John H. Gomez (SBN 171485)
John P. Fiske (SBN 249256)
Deborah S. Dixon (SBN 248965)
Stephanie S. Poli (SBN 286239)
655 West Broadway, Suite 1700
San Diego, California 92101
Tel:   (619) 237-3490
Fax:   (619) 237-3496
Fiske@GomezTrialAttorneys.com

**Attorneys for Plaintiff**

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AL BAHR SHRINERS, an organization, <br><br> Plaintiff, <br><br> vs. <br><br> THE UNITED STATES OF AMERICA; FCA US LLC, a corporation; CHRYSLER GROUP LLC, a corporation; SOUTAR'S, a corporation, dba SOUTARS AUTO GROUP; MOJAVE AUTO GROUP SOUTH, INC., a corporation; and DOES 1 through 100, inclusive, <br><br> Defendants. | Case No. 3:14-cv-01437-AJB-KSC <br><br> **SECOND AMENDED COMPLAINT FOR DAMAGES** <br><br> 1. Negligence <br> 2. Negligence Per Se <br> 3. Product Liability <br> 4. Negligence <br> 5. Negligent Recall <br> 6. Trespass <br> 7. Private Nuisance <br> 8. Public Nuisance <br><br> **DEMAND FOR JURY TRIAL AGAINST FCA US LLC, CHRYSLER GROUP LLC, SOUTAR'S dba SOUTARS AUTO GROUP, MOJAVE AUTO GROUP SOUTH, INC.** |

## VENUE AND JURISDICTION

1.    This is an action arising under the Federal Tort Claims Act 28 U.S.C. §§ 2671 et seq.  This Court is vested with original jurisdiction to hear this matter pursuant to 28 U.S.C. § 1346 (b)(1), which provides in part that, "[t]he district courts … shall

have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any officer, employee or servant of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

2.     This action arises from a fire that consumed approximately 7,055 acres in San Diego County, including Mount Laguna in the Cleveland National Forrest, and destroyed or rendered useless approximately 150 homes, structures, residences, lodges, cabins, and other buildings, and destroyed hundreds of vehicles, golf carts, and other significant items of personal property, (hereinafter "CHARIOT FIRE") all located at the Al Bahr Shrine Camp on Mt. Laguna in the Cleveland National Forest, located in San Diego County, California (hereinafter "SHRINE COMMUNITY"), on or about July 8, 2013.

3.     All corporate Defendants named herein at all relevant times either do or regularly did business in San Diego County and/or California.

**PARTIES AND GENERAL ALLEGATIONS**

4.     Plaintiff AL BAHR SHRINERS, SHRINERS INTERNATIONAL (hereinafter "SHRINERS" or "Plaintiff") is, and at all times mentioned herein was, organized and headquartered in the city of San Diego, State of California.

5.     The SHRINERS was chartered in San Diego, California on May 13, 1913, and is part of the SHRINERS INTERNATIONAL, a fraternal group dedicated to brotherly love, relief, and truth, in addition to philanthropic efforts including the Shriners Hospital for Children, servicing burn and other types of injuries.

6.     Defendant UNITED STATES OF AMERICA ("USA") is, and at all relevant times herein was, a governmental entity, organized pursuant to the Constitution of the United States, and responsible for the Bureau of Land Management ("BLM")

within the Department of the Interior, responsible for the management and conservation of public lands, including the area of San Diego County where the CHARIOT FIRE originated.

7.    BLM employee JASON PETERS is, and at all relevant times herein was, an employee and/or agent of BLM responsible for the area of San Diego County where the CHARIOT FIRE originated.  Attached as Exhibit A is the Certification of Scope of Employment regarding JASON PETERS.

8.    Defendant FCA US LLC, a corporation, is and at all relevant times herein was, a Delaware corporation, with its headquarters and principal place of business in Auburn Hills, Michigan.

9.    Defendant CHRYSLER GROUP LLC, a corporation, is and at all relevant times herein was, a Delaware corporation, with its headquarters and principal place of business in Auburn Hills, Michigan.

10.  It appears in late 2014, CHRYSLER GROUP LLC may have changed its name to FCA US LLC.

11.  Defendants FCA US LLC and CHRYSLER AUTO GROUP LLC will hereinafter be collectively referred to as "CHRYSLER."

12.  Defendant SOUTAR'S, a corporation, dba SOUTARS AUTO GROUP is, and at all relevant times herein was, a California corporation located at 1010 W Main Street, Barstow, California 92311.

13.  Defendant MOJAVE AUTO GROUP SOUTH, INC., is and at all relevant times herein was, a California corporation located at 1010 W Main Street, Barstow, California 92311.

14.  It appears at some time after the subject incident SOUTAR'S may have sold the subject automobile dealership to MOJAVE AUTO GROUP, INC.

15.  Defendants SOUTAR'S and MOJAVE AUTO GROUP SOUTH, INC. will hereinafter be collectively referred to as "THE DEALERSHIP."

16.    Plaintiffs are informed and believe, and on this basis alleges that, at all

1  times herein mentioned, DOES 1 through 100, were the officers, employees, servants,
2  agents, contractors, subsidiaries, divisions, and other affiliated individuals or entities, of
3  each other, and were acting within the scope and purpose of such agency or
4  employment, and with the power and authority vested in them as officers, employees, or
5  servants, or ratification, endorsement or approval of the conduct of each other with
6  respect to the events and happenings alleged herein. All Defendants herein named may
7  be referred to collectively as "Defendants."

8      17.   Defendant USA is vicariously liable for the negligent, reckless, and/or
9  intentional acts of JASON PETERS and DOES 1 through 100, all of whom were acting
10 in the course and scope of their employment as officers, employees, agents, and/or
11 servants at all relevant times herein alleged.

12     18.   The true names and capacities of Defendants DOES 1 through 100
13 inclusive are unknown to Plaintiffs, who therefore sue said Defendants by such fictitious
14 names.   Plaintiffs are informed and believe and allege thereon that each of the
15 Defendants herein designated as DOE is responsible in some manner for the events and
16 happenings herein referred to and caused the injuries and damages legally thereby as
17 hereinafter alleged.

18                    **PROCEDURAL ALLEGATIONS**

19     19.   As outlined above, Plaintiff served a Claim for Damages pursuant to the
20 Federal Tort Claims Act on the BLM.  The Claim for Damages is attached hereto as
21 Exhibit 'B'.

22     20.   On August 22, 2014 or earlier, the statutory six month period to respond to
23 Plaintiffs' Claims for Damages passed, and the BLM neither denied nor accepted nor
24 took any action on Plaintiffs' Claims, thereby allowing Plaintiffs to file a lawsuit under
25 the FTCA in this federal court.

26     21. In accordance with 28 U.S.C. § 2675(a), Plaintiffs now file this action.
27 / / /
28 / / /

# FACTUAL ALLEGATIONS

22.     On or about July 6, 2013, JASON PETERS, acting under the course and scope of his employment and/or agency with the BLM, negligently, recklessly, and/or intentionally drove, operated, owned, maintained, and/or maintenanced a BLM Jeep, identified by U.S. Government license plate number I428127, VIN 1J8GA69119L747184, 2009 JEEP WRANGLER UNLIMITED RUBICON (hereinafter "JEEP"), on or around Highway S2 and the Great Southern Overland Stage Route, in an area southwest of Butterfield Ranch Resort, in San Diego County.

23.     On or about July 6, 2013, JASON PETERS negligently, recklessly, and/or intentionally started the CHARIOT FIRE by failing to inspect and/or notice and/or clear debris including but not limited to brush and other material from his JEEP, including areas such as the JEEP undercarriage, skid plate, and/or transmission area, and other areas of his JEEP, while driving across and around the desert floor on and off road.

24.     Said debris, brush, and other materials in the undercarriage of the JEEP ignited from contact with certain component parts of the JEEP including but not limited to the catalytic converter or other parts of the exhaust system, and/or the engine block, fuel delivery system, and/or other parts of the JEEP.  The ignited fire spread and ignited other material including plastic material of the JEEP, including the plastic fuel line to the engine compartment creating a fire underneath the JEEP as JASON PETERS negligently, recklessly, and intentionally drove his JEEP across and around the desert floor on and off road while under the course and scope of employment with the BLM. Fire activity was accelerated as the fuel tank contents drained out of the burned fuel line.

25.     JASON PETERS, while acting under the course and scope of his employment with the BLM, continued to drive across and around the Great Southern Overland Stage Route and the desert floor on and off road while the undercarriage of his JEEP was on fire and/or spreading ignited material, igniting at least four General Origin Areas ("GOAs"). These GOAs later combined together to form the CHARIOT FIRE.

26.   JASON PETERS was, at all relevant times herein alleged, driving, maintaining, maintenancing,  inspecting or failing to inspect, owning and operating vehicles owned, controlled, maintained, maintenanced, and/or possessed by BLM, with the BLM's express or implied consent and permission, and within the course and scope of his employment with the BLM.

27.   On or about July 8, 2013, the CHARIOT FIRE spread to the SHRINE COMMUNITY, a nearly 100 year-old, 25+ acre mountain community located on Mt. Laguna in the Cleveland National Forest. The SHRINE COMMUNITY has been a private community used by Plaintiffs under lawful permit from the United States Forest Service for many, many decades.

28.   The SHRINE COMMUNITY included an 87-year old lodge, dining hall, caretaker cabin, two dormitories, five rental cabins, camp area, playgrounds, 100 permanent trailer pads, 28 transient trailer pads, fixed structure cabins, a water well, 400 feet of pipeline with a 60,000 gallon water storage tank, as well as associated parking areas, roadways, waterlines, septic, gas, power and telephone facilities, as well as other features, structures, and things that were destroyed or rendered useless.

29.   The SHRINE COMMUNITY was used by the Plaintiffs and its constituent members, other members of groups affiliated with Masons, affiliated Masonic Bodies, their families, and guests for activities including but not limited to camping, meetings, parties, weddings, and reunions. Other community groups used the SHRINE COMMUNITY for events, programs, and private activities.

30.   The SHRINE COMMUNITY consisted of approximately 150 structures, most of which were completely destroyed. The remaining "surviving" structures were partially damaged and can no longer be used.   The Plaintiffs permit has been downgraded to a non-use status and the entire community has been rendered useless.

**CHRYSLER/DEALSHERSHIP'S Defective Jeep and Failure to Recall**

31.   The CHRYSLER and DEALERSHIP Defendants designed, manufactured, labeled, promoted, advertised, distributed, inspected, and/or sold the subject JEEP.

32.     The DEALERSHIP Defendants received the subject JEEP in the stream of commerce and distributed, promoted, advertised, inspected, transferred, and sold the subject JEEP to Defendant USA.

33.     The DEALERSHIP Defendants conducted a pre-delivery inspection of the JEEP on February 18, 2009 and offered the subject JEEP for sale on February 19, 2009, according to a CARFAX report.

34.     The subject JEEP was defectively designed and manufactured because debris from outside the vehicle is easily susceptible to getting caught and being collected in the skid plates and undercarriage of the JEEP near or around the catalytic converters, exhaust system, and other parts of the JEEP.

35.     The subject JEEP was defective for other reasons related to the ignition of fire in, near, or around the engine compartment, exhaust system and other areas of the vehicle.

36.     The defects in the subject JEEP were the cause or a substantial factor in causing the subject CHARIOT FIRE and causing the damages to Plaintiff.

37.     The subject JEEP was a 2009 model, which had a substantially similar or same design to the 2010 Jeep Wrangler, which was recalled for a defective design that allowed debris from outside the vehicle to get caught and collect in/on the skid plates and undercarriage of the Jeep vehicles, thereby causing or starting a fire near or around the catalytic converters, exhaust system, and other parts of the Jeep.

38.     In or around 2012, approximately one year prior to the CHARIOT FIRE, CHRYSLER recalled approximately 67,877 2010 Jeep Wranglers due to fire hazards caused by debris collection in the skid plate and fires igniting near catalytic converters, but knowingly, willfully, intentionally, and recklessly failed to recall any other Jeep Wrangler model years despite having the same or similar design defects that create the same or similar fire hazards.

39.     CHRYSLER, in relation to the recalled 2010 Jeep, drafted an owner notification letter which read in part, "The transmission skid plate on your vehicle (VIN:

xxxxxxxxxxxxxxxxx) may allow debris to collect in the undercarriage of the vehicle under certain driving conditions.   If an excessive amount of debris collects in the undercarriage, the catalytic converter could ignite the debris, causing an underbody fire without warning."

40.   The "fix" to the recalled 2010 Jeep was the installation of a skid "bar" to replace a skid "plate," thereby reducing and/or eliminating the skid plate's ability to collect debris that could lead to the ignition of a fire near or around the catalytic converter or exhaust system, but CHRYSLER and DEALERSHIP Defendants knowingly, willfully, intentionally, and recklessly failed to recall other Jeep Wrangler model years including the 2009, failing to provide the same skid "bar" replacement instructions.

41.   JEEP's remedy was simple, as outlined in the U.S. Department of Transportation National Highway Traffic Safety Administration recall acknowledgement letter dated May 18, 2012.  The "Remedy" was CHRYSLER WILL NOTIFY OWNERS, AND DEALERS WILL REPLACE THE SKID PLATE WITH A SKID BAR, FREE OF CHARGE."

42.   The Dealer Service Instructions for the 2010 Jeep Wrangler recall, known as "Safety Recall M22/NHTSA 12V-216," states "Subject: The transmission skid plate on about 67,800 of the above vehicles may allow debris to collect in the undercarriage of the vehicle under certain driving conditions. If an excessive amount of debris collect in the undercarriage, the catalytic converter could ignite debris, causing an underbody fire without warning. Repair: The transmission skid plate must be replaced with a skid bar on all involved vehicles."

43.   The Dealer Service Instructions state, "No special tools are required to perform this service procedure," and depict a mechanic happily using a torque wrench to replace the skid plate with a "New Transmission Skid Bar," below:

/ / /

/ / /



44.     Despite the owner notification for the 2010 Jeep Wrangler recall and skid plate to skid bar replacement instructions, CHRYSLER and DEALERSHIP knowingly, willfully, intentionally, and recklessly failed to notify owners of any other Jeep models including 2009 despite the same or substantially similar fire hazard due to the same or substantially similar design defect.

45.     In or around November 2011, the Chinese government required the CHRYSLER Defendants to recall Jeep Wranglers from 2007 through 2010, which included the 2009 subject JEEP. The "fix" under the Chinese recall was similarly the installation of a skid "bar" to replace a skid "plate," thereby reducing and/or eliminating the skid plate's ability to collect debris that could lead to the ignition of a fire near or around the catalytic converter or exhaust system.

46.     Prior to recalling the 2010 Jeep Wrangler, CHRYSLER received reports of and knew about other model year Jeep Wranglers, including the 2009 models, catching fire due to similar or same design defects. Despite having actual knowledge of the design defect in other model year Jeep Wranglers, CHRYSLER knowingly, willfully, intentionally, and recklessly failed to recall any other model years, including 2009, in order to reduce monetary losses from recalling vehicles, to increase profits, and to reduce negative media attention, despite the severe risk to human health and safety, including severe risk to property loss such as suffered by the Plaintiff.

/ / /

**CHRYLER and DEALERSHIP Promote the Wrangler for Off-Road Use**

47.     The CHRYSLER and DEALERSHIP Defendants notoriously and successfully promote their Jeep Wrangler for off-road use.  As of January 28, 2015, CHRYSLER brags on its website that the Jeep Wrangler is "Trail Rated® for the toughest trails in the world.  The Trail Rated® badge signifies that any vehicle holding it has been tested to perform in the following five categories of off-road conditions: traction, ground clearance, maneuverability, articulation and water fording."  Here is CHRYSLER's current Jeep Trail Rated badge:



48.     As of January 28, 2015, CHRYSLER's website is replete with cool, action-packed photographs and videos depicting Jeep Wranglers in off-road conditions, all part of CHRYSLER'S successful campaign to lure the consumer and user into believing the Jeep Wrangler is safe and fit for off-road use, despite the known design defects and fire hazards:





**CalFire and BLM Fire Investigation Reports**

    **A.**    **Cal Fire Report and News Release**

    49.    On May 9, 2014, the California Department of Forestry and Fire Protection, San Diego Unit (Cal Fire), issued a "Cal Fire News Release" entitled "Chariot Fire Cause Determined."

    50.    The May 9, 2014 news release states in part, "CAL FIRE investigators have determined that the July 6, 2013 Chariot Fire southwest of Julian was caused by a vehicle.  A Jeep Wrangler owned and operated by the Bureau of Land Management ignited the dry vegetation under the vehicle."

    51.    Cal Fire also issued an "Investigation Report," which lists the "Violation" as "Public Resources Code § 4435. 'If any fire originates from the operation or use of any engine, machine, barbeque, incinerator, railroad rolling stock, chimney or any other device which may kindle a fire, the occurrence of the fire is prima facie evidence of negligence in the maintenance, operation, or use of rolling stock, chimney, or other device.  If such fire escapes from the place it originated and it can be determined which person's negligence caused such fire, such person is guilty of a misdemeanor.'"

    52.    Cal Fire's Investigation Report lists the "Suspect" as "Jason Peters, Officer, Bureau of Land Management (BLM)…."

    53.    Cal Fire's Investigation Report states, "The fire originated under the cab in the chassis area below the transmission.  Dry brush that had collected on top of the skid plate and transmission cross member.  The dry brush ignited from contact with a

catalytic converters (not specified if one or more).  Fire spread across the brush and ignited plastic material, including the plastic incoming fuel line to the engine compartment. Fire activity was accelerated as the fuel tank contents drained out of the burned fuel line.  The fire severely damaged the vehicle."

54.    Cal Fire's Investigation Report includes photographs of the subject JEEP still on fire after having ignited the CHARIOT FIRE, some of which are depicted below.





/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**SECOND AMENDED COMPLAINT FOR DAMAGES**



55.     Cal Fire's Investigation Report includes photographs of the charred debris, which was (1) captured by the defective design of the JEEP's chassis and skid plate, and (2) caught fire near the JEEP's catalytic converters, some of which are depicted below.



**B.     BLM Report**

56.     On July 23, 2013, fire investigator Steve Mackaig issued a report to and for the BLM, which states in part, "FIRE CAUSE ANALYSIS, Analysis of the data gathered during the investigation, including my examination, revealed the fire originated under the cab in the chassis area below the transmission.  Dry brush that had collected on top of a skid plate and transmission cross member ignited from contact with a catalytic converters. Fire spread across brush igniting plastic material, including the plastic incoming fuel line to the engine compartment.  Fire activity was accelerated

as the fuel tank contents drained out of the burned fuel line. The fire severely damaged the vehicle."

57.    The BLM/Mackaig report continues, "Analysis of the data, including the fire patterns and fire behavior indicators, identified the fire originating at the chassis located skid plate and transmission cross member.  Accumulated brush ignited from contact with a catalytic converter.  Two catalytic converters are mounted to exhaust pipes and located approximately four inches above both sides of the skid plate and transmission cross member.  The front edge of skid plate cuts through tall brush allowing brush to accumulate along the top side of the skid plate and cross member."

58.    The BLM/Mackaig report includes photographs of the accumulated debris which was ignited by the catalytic converters, below.





Gomez
Trial Attorneys

# FIRST CLAIM FOR RELIEF

## I. Negligence

### (Against USA)

59.    Plaintiff hereby incorporates each and every previous allegation as though fully set forth herein.

60.    At all relevant times herein alleged Defendants had a duty to act with reasonable and due care for the safety of others to not cause personal or real property damage, including as part of their employment and/or duties with and for the BLM.

61.    On July 6, 2013, Defendants created a dangerous condition on Highway S2 at or around the Great Overland Butterfield Stage Route by driving the JEEP with ignited, dry brush caught in the undercarriage.

62.    Defendants knew or should have known that the JEEP posed the threat of and created the dangerous condition in and around an area that was extremely susceptible to wild fire based on factors including but not limited to:

        a)    Temperatures in the fire area were 6-7 degrees Fahrenheit above average;

        b)    the Burn Index, based on ten years of climatology, was near or at record maximum levels, supporting an exceptionally high probability for large fire growth;

        c)    live fuel moistures were averaging 60%, a critical level;

        d)    winds of five miles per hour with gusts up to 21 miles per hours; and

        e)    the probability of ignition was calculated to be at 90%.

63.    Despite this knowledge, Defendants continued to negligently, recklessly, and/or intentionally operate the JEEP while the JEEP posed the threat of and created the dangerous condition wherein the JEEP ignited the CHARIOT FIRE.

64.    Defendants knew or should have known of the probability, likelihood, or threat of fire and/or ignition on the underside of the JEEP.  Defendants knew or should

have known of the danger posed by brush and/or other debris lodged in the undercarriage.

65.     Defendants failed to exercise reasonable care in that they failed to inspect, notice, and/or clear out the JEEP's undercarriage, and Defendants failed to exercise reasonable care to prevent and respond to the fire, which originated from his JEEP, and Defendants failed to exercise reasonable care in that Defendants failed to extinguish the fire and prevent its spread.

66.     Defendants knew or should have known that their acts and omissions as alleged herein would result in harm to the public in general, and did in fact cause substantial personal and real property damage to Plaintiffs including the destruction as described above.  Defendants' conduct was a substantial factor in causing Plaintiff's harm.

67.     The acts and omissions by Defendants were the legal cause of the injuries and damages to the Plaintiff.  Defendants are liable to the Plaintiff for all damages to their property caused by the fire, including clean-up of the fire damaged acreage and area, replacement, market value, loss of use, loss of business income, and/or other types and categories of damages.

68.     As a proximate result of Defendants' wrongful acts, Plaintiff suffered substantial personal and real property damage as described above.

69.     As a proximate result of Defendants' wrongful acts, Plaintiff suffered the loss of current and future use of the SHRINE COMMUNITY and personal and real property located within it, including loss of business income, past and future.

## SECOND CLAIM FOR RELIEF

### II. Negligence Per Se- Health and Safety Code § 13007

### (Against USA)

70.     Plaintiff hereby incorporates each and every previous allegation contained as though fully set forth herein.

71.     Under California Health and Safety Code § 13007, any person who

willfully, negligently, or in violation of law, sets fire to, allows fire to be set, or allows a fire kindled or attended by him to escape to the property of another, whether privately or publicly owned, is liable to the owner of such property for any damages to the property caused by the fire.

72.     On or about July 6, 2013, Defendants negligently, recklessly, and/or intentionally started the CHARIOT FIRE, as described above.

73.     Plaintiff owned real and personal property located in the SHRINE COMMUNITY.

74.     On or about July 6, 2013, the Defendants caused the CHARIOT FIRE that destroyed the SHRINE COMMUNITY, including real and personal property owned by Plaintiffs.

75.     Defendants are liable to Plaintiff for all damages to their property caused by the fire, including clean-up costs, replacement, market value, loss of use, loss of business income, and/or other types and categories of damages.

76.     Defendants violated California Health and Safety Code § 13007 when JASON PETERS, while acting within the course and scope of his employment and/or agency with the BLM, negligently, recklessly, and/or intentionally caused the CHARIOT FIRE, which subsequently destroyed personal and real property owned by Plaintiffs.

77.     Defendants' violation of the law was a substantial factor in bringing about the harm to Plaintiff.

78.     As a proximate result of Defendants' wrongful acts, Plaintiff suffered substantial personal and real property damage including the destruction of real and personal property as described herein and above.

79.     As a proximate cause of Defendants' wrongful acts, Plaintiff suffered the loss of current and future use of the SHRINE COMMUNITY and personal and real property located within it, including loss of business income, past and future.

/ / /

**THIRD CLAIM FOR RELIEF**

**Strict Product Liability**

**(Against CHRYSLER and DEALERSHIP Defendants)**

80.    Plaintiff hereby incorporates each and every previous allegation as though fully set forth herein.

81.    The CHRYSLER and DEALERSHIP Defendants designed, manufactured, distributed, and/or sold the subject JEEP.

82.    The subject JEEP did not perform as safely as an ordinary consumer would have expected it to perform when used or misused in an intended or reasonably foreseeable way.

83.    Plaintiff was harmed and incurred damages as a result of the JEEP's failure to perform safely.

84.    The JEEP's defective design and failure to perform safely was a substantial factor in causing Plaintiff's harm.

85.    The JEEP had potential risks, including but not limited to fire ignition, that were known and/or knowable in light of the scientific and mechanical/engineering knowledge that were generally accepted in the community at the time of the design, manufacture, distribution, and sale.

86.    The potential risks, including but not limited to fire ignition, presented a substantial danger when the JEEP is used or misused in an intended or reasonably foreseeable way.

87.    Ordinary consumers would not have recognized the potential risks, including but not limited to fire ignition.

88.    The CHRYSLER and DEALERSHIP Defendants knowingly, willfully, intentionally, and recklessly failed to adequately warn or instruct of the potential risks, including but not limited to fire ignition.

89.    The Plaintiff was harmed and incurred damages as a result of the Defendant's failure to warn or instruct of the potential risks, including but not limited to

1    fire ignition.

2    90.    The lack of sufficient warnings or instructions was a substantial factor in

3    causing Plaintiff's harm and damages.

4    91.    The JEEP contained a manufacturing defect when it left the possession of

5    the CHRYSLER and DEALERSHIP Defendants.

6    92.    The Plaintiff was harmed and incurred damages as a result of the

7    manufacturing defect, which was a substantial factor in causing the Plaintiff's harm and

8    damages.

9    93.    The CHRYSLER and DEALERSHIP Defendants acted with a willful and

10    conscious disregard of the rights and safety of others.

11    **FOURTH CLAIM FOR RELIEF**

12    **Negligence**

13    **(Against CHRYSLER and DEALERSHIP Defendants)**

14    94.    Plaintiff hereby incorporates each and every previous allegation as though

15    fully set forth herein.

16    95.    The CHRYSLER and DEALERSHIP Defendants designed, manufactured,

17    supplied, installed parts on, inspected, repaired, and/or labeled the subject JEEP.

18    96.    The CHRYSLER and DEALERSHIP Defendants were negligent in

19    designing, manufacturing, supplying, installing parts on, inspecting, repairing, and/or

20    labeling the subject JEEP.

21    97.    The Plaintiff was harmed and incurred damages as a result of

22    CHRYSLER'S and the DEALERSHIPS' negligence, which was a substantial factor in

23    causing Plaintiff's harm and damages.

24    98.    The CHRYSLER and DEALERSHIP Defendants manufactured,

25    distributed, and/or sold the subject JEEP.

26    99.    The CHRYSLER and DEALERSHIP Defendants knew or reasonably

27    should have known that the JEEP was dangerous or likely to be dangerous when used or

28    misused in a reasonably foreseeable manner.

100.   The CHRYSLER and DEALERSHIP Defendants knew or reasonably should have known that users would not realize the danger.

101.   The CHRYSLER and DEALERSHIP Defendants knowingly, willfully, intentionally, and recklessly failed to adequately warn of the danger or instruct on the safe use of the JEEP.

102.   A reasonable manufacturer, distributor, or seller under the same or similar circumstances would have warned of the danger or instructed on the safe use of the JEEP.

103.   Plaintiff was harmed and incurred damages as a result of the Defendants' failure to warn or instruct, each of which was a substantial factor in causing Plaintiff's harm.

104.   The CHRYSLER and DEALERSHIP Defendants acted with a willful and conscious disregard of the rights and safety of others.

**FIFTH CLAIM FOR RELIEF**

**Negligent Recall/Retrofit**

**(Against CHRYSLER and DEALERSHIP Defendants)**

105.   Plaintiff hereby incorporates each and every previous allegation as through fully set forth herein.

106.   The CHRYSLER and DEALERSHIP Defendants manufactured, distributed, and/or sold the subject JEEP.

107.   The CHRYSLER and DEALERSHIP Defendants knew or reasonably should have known that the subject JEEP was dangerous or likely to be dangerous when used in a reasonably foreseeable manner.

108.   The CHRYSLER and DEALERSHIP Defendants became aware of this defect after the subject JEEP was sold.

109.   The CHRYSLER and DEALERSHIP Defendants knowingly, willfully, intentionally, and recklessly failed to recall and/or retrofit or warn of the danger of the subject JEEP.

110.   A reasonable manufacturer, distributor, or seller under the same or similar circumstances would have recalled and/or retrofitted and/or warned of the subject JEEP.

111.   Plaintiff was harmed and incurred damages dues to Defendants' failure to recall and/or retrofit and/or warn of the product, which was a substantial factor in causing Plaintiff's harm.

112.   The CHRYSLER and DEALERSHIP Defendants acted with a willful and conscious disregard of the rights and safety of other.

## SIXTH CLAIM FOR RELIEF

### Trespass to Property

### (Against All Defendants)

113.   Plaintiff hereby incorporates each and every previous allegation as though fully set forth herein.

114.   Plaintiff owned certain cabins, buildings, structures, and other property located at the SHRINE COMMUNITY.

115.   Defendants negligently caused the CHARIOT FIRE to enter Plaintiff's property.

116.   Plaintiff did not give permission to Defendants to cause the CHARIOT FIRE to enter Plaintiff's property.

117.   Plaintiff was actually harmed and incurred damages as a result of the Defendants' actions, which were a substantial factor in causing Plaintiff's harm and damages.

## SEVENTH CLAIM FOR RELIEF

### Private Nuisance

### (Against All Defendants)

118.   Plaintiff hereby incorporates each and every previous allegation as though fully set forth herein.

119.   Plaintiff owned certain cabins, buildings, structures, and other property located at the SHRINE COMMUNITY.

120.   Defendants, by acting or failing to act, caused the CHARIOT FIRE, which was harmful to health and obstructed the free use of property, so as to interfere with the comfortable enjoyment of life and property.

121.   The CHARIOT FIRE interfered with Plaintiff's use or enjoyment of its property.

122.   The Plaintiff did not consent to Defendants' conduct or to the CHARIOT FIRE destroying its cabins, buildings, structures, and other property.

123.   An ordinary person would be reasonably annoyed or disturbed by the CHARIOT FIRE destroying their cabins, buildings, structures, and other property.

124.   Plaintiff was harmed and incurred damages as a result of Defendants conduct, which was a substantial factor in causing Plaintiff's harm and damages.

125.   There was no public benefit to the CHARIOT FIRE.

## EIGHTH CLAIM FOR RELIEF

### Public Nuisance

### (Against All Defendants)

126.   Plaintiff hereby incorporates each and every previous allegation as though fully set forth herein.

127.   Defendants, by acting or failing to act, created the CHARIOT FIRE, which was harmful to health and was an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life and property.

128.   The CHARIOT FIRE affected a substantial number of people at the same time.

129.   An ordinary person would be reasonably annoyed or disturbed by the CHARIOT FIRE.

130.   There was no social utility to the CHARIOT FIRE.

131.   Plaintiff did not consent to the CHARIOT FIRE destroying its cabins, buildings, structures, and other property.

132.   Plaintiff suffered harm and damages that were/are different from the type

1  of harm suffered by the general public.

2       133.   Defendants' conduct was a substantial factor in causing Plaintiff's harm

3  and damages.

4                                    **PRAYER**

5  WHEREFORE, Plaintiffs pray for judgment against all Defendants, and each of them,

6  as follows:

7       1.      For general damages;

8       2.      For special and/or economic and/or loss of use damages, including

9  sentimental value for certain real and personal property losses, and reasonable

10 replacement costs and/or other appropriate measures of damages;

11      3.      For incidental damages;

12      4.      For punitive damages as against the CHRYSLER and DEALERSHIP

13 Defendants;

14      5.      For costs of suit incurred herein; and

15      6.      For such other and further relief as the court may deem just and proper.

16

17 Dated:  January 28, 2015              **GOMEZ TRIAL ATTORNEYS**

18                                      By:   /s/ John P. Fiske

19                                      JOHN H. GOMEZ

20                                      JOHN P. FISKE

21                                      DEBORAH DIXON

22                                      STEPHANIE S. POLI
                                        Attorneys for Plaintiff

## **DEMAND FOR JURY TRIAL**

Plaintiff respectfully demands a trial by jury on all issues so triable against defendants "CHRYLSER" and "DEALERSHIP".

Dated:  January 28, 2015                    **GOMEZ TRIAL ATTORNEYS**

By:   /s/ John P. Fiske
JOHN H. GOMEZ
JOHN P. FISKE
DEBORAH DIXON
STEPHANIE S. POLI
Attorneys for Plaintiff