UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| AL BAHR SHRINERS, an organization,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA; et al.,<br><br>Defendants. | Case No.: 14-cv-1437 AJB (KSC)<br><br>**ORDER:**<br><br>**(1) GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>**(2) GRANTING PLAINTIFFS' MOTION FOR LEAVE TO AMEND COMPLAINT; AND**<br><br>**(3) GRANTING PLAINTIFFS' MOTION TO FILE DOCUMENTS UNDER SEAL**<br><br>(Doc. Nos. 110, 119, 135) |
|---|---|

Pending before the Court is Defendant the United States of America's ("Defendant") motion for partial summary judgment, (Doc. No. 110), and Plaintiffs Al Bahr Shriners, Great American Insurance Company of New York, Fire Insurance Exchange, State Farm General Insurance Company, and Federal Insurance Company's (collectively referred to as "Plaintiffs") motion to file documents under seal, (Doc. No. 119), and motion for leave to file amended complaints in related cases, (Doc. No. 135). Pursuant to Civil Local Rule

7.1.d.1, the Court finds these motions suitable for determination on the papers and without oral argument. Accordingly, the motion hearing dates set for July 6, and August 10, 2017, in Courtroom 4A at 2:00 P.M. are **VACATED**. As explained in more detail below, the Court **GRANTS** Plaintiffs' motion to seal and motion for leave to amend the complaints in case numbers 14-cv-1963 and 14-cv-2810, and **GRANTS** Defendant's motion for partial summary judgment.

## **FACTUAL BACKGROUND**

As the Court is already well-versed as to the alleged facts in this case, for the sake of brevity, the Court will only provide a brief summary of the events leading up to the institution of this action.

This case revolves around a 2013 fire that decimated large portions of Mt. Laguna in the Cleveland National Forest (the "Chariot Fire"). (Doc. No. 23 ¶ 28.) Plaintiff Al Bahr Shriners ("Al Bahr") is a fraternal group that inhabited around twenty-five acres on Mt. Laguna through the use of Term Special Use Permits ("Term Permits") issued by the United States Department of Agriculture Forest Service. (*Id.* ¶¶ 5, 28; Doc. No. 110-1 at 7–8; Doc. No. 110-4 at 2.) Specifically, the Term Permits allowed Al Bahr's to build several structures on Mt. Laguna including a dining hall, two dormitories, five rental cabins, 100 permanent trailer pads, twenty-eight transient trailer pads, a water well, 400 feet of pipeline with a 60,000 gallon water storage tank, as well as associated roadways, waterlines, septic, gas, power and telephone facilities, and an eighty-seven year old lodge (the "Shrine Community").[1] (Doc. No. 23 ¶ 29.) In total, the Shrine Community consisted of approximately 150 structures. (*Id.* ¶ 31.)

To build the Authorized Improvements, Al Bahr was given three different types of Term Permits: (1) the Term Special Use Permit issued to the Al Bahr Temple in December of 2002 (the "Al Bahr Permit"); (2) thirteen Term Special Use Permits for Recreation

---

[1] All of the structures in the Shrine Community are identified by the Term Permits as "Authorized Improvements." (Doc. No. 110-4 at 2.)

Residences issued to individuals (the "Recreation Permits"); and (3) the Term Special Use Permit issued to the Sierra Club ("SUP"). (Doc. No. 110-1 at 9; Doc. No. 120 at 6–7.) All of the Term Permits contain a clause that states that "[t]he holder assumes all risk of loss to the authorized improvements." (Doc. No. 110-4 at 4, 14, 24, 34, 44, 54, 64, 74, 84, 94, 104, 114, 124; Doc. No. 110-5 at 6.)[2] Additionally, the provision continues to state that

> Loss to the authorized improvements may result from but is not limited to theft, vandalism, fire and any fire-fighting activities (including prescribed burns), avalanches, rising waters, winds, falling limbs or trees, and acts of God. If authorized improvements in the permit area are destroyed or substantially damaged, the authorized officer shall conduct an analysis to determine whether the improvements can be safely occupied in the future and whether rebuilding should be allowed. If rebuilding is not allowed, the permit shall terminate.

("Risk of Loss Clause"). (*Id.*)

On the day of the Chariot fire—July 6, 2013—Al Bahr contends that Jason Peters, an employee of the Bureau of Land Management ("BLM") negligently operated a BLM Jeep and drove it through an area southwest of Butterfield Ranch Resort, in San Diego County. (Doc. No. 23 ¶ 23.) While driving, Al Bahr asserts that Mr. Peters failed to notice that the BLM Jeep was collecting debris underneath the car carriage that subsequently ignited spreading a fire across the desert floor. (*Id.* ¶¶ 24–25.) This fire then spread and ultimately completely destroyed the Shrine Community. (*Id.* ¶ 31.) On May 9, 2014, the California Department of Forestry and Fire Protection determined that the Chariot Fire was caused by a vehicle. (*Id.* ¶¶ 50–51.) Thereafter, on July 23, 2013, the BLM issued a report that also agreed that the Chariot Fire originated due to dry brush collected under a vehicle. (*Id.* ¶¶ 57–58.)

///

---

[2] Finding that all of the Term Permits contain the same clauses, for purposes of this Order, the Court will only reference Doc. No. 110-4 when citing to the Risk of Loss Clause.

# PROCEDURAL BACKGROUND

On June 13, 2014, Al Bahr filed its initial complaint. (Doc. No. 1.) On November 18, 2014, January 28, 2015, and May 15, 2015, Al Bahr filed amended complaints by way of joint motion. (Doc. Nos. 7, 12, 23.) On February 4, 2016, Defendant filed a cross claim against the remaining Defendants—FCA US LLC, Chrysler Group LLC, Soutar's, Mojave Auto Group South, Inc., Mojave Auto Group North, Inc., and Does 1 through 100. (Doc. No. 39.) On April 24, 2017, Defendant filed the present matter, its motion for partial summary judgment. (Doc. No. 110.) On May 15, 2017, Plaintiffs filed a motion to file under seal its joint opposition to the present matter. (Doc. No. 119-1.) On the same day, Plaintiff Federal Insurance Company ("Federal Insurance") filed a separate opposition to Defendant's motion. (Doc. No. 118.) On June 15, 2017, Plaintiffs filed its motion for leave to file an amended complaint. (Doc. No. 135.)

# LEGAL STANDARD

## I. Legal Standard Governing Summary Judgment

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 if the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. *Id.*

A party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating the nonmoving party failed to establish an essential element of the nonmoving party's case on which the nonmoving party bears the burden of proving at trial. *Id.* at 322–23. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

Once the moving party establishes the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to set forth facts showing a genuine issue of a disputed fact remains. *Celotex Corp.*, 477 U.S. at 330. When ruling on a summary judgment motion, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II. Legal Standard Governing Motions to Seal

Courts have historically recognized a "general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 n.7 (1978). In order to overcome this strong presumption in favor of public access, a party seeking to seal a judicial record must articulate justifications for sealing that outweigh public policy favoring disclosure. *Kamakana v. City and Cty. of Honolulu*, 447 F.3d 1172, 1178–79 (9th Cir. 2006). A party seeking to seal documents attached to a dispositive motion must articulate a compelling reason to do so. *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 679 (9th Cir. 2010).

## III. Legal Standard Governing Leave to File Amended Complaints

Federal Rule of Civil Procedure 15 provides that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Specifically, the ninth circuit has instructed that "this policy is to be applied with extreme liberality." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001). However, despite the policy of "liberality," the Supreme Court has offered four factors to consider in deciding whether to grant a motion for leave to amend under Rule 15(a): (1) bad faith; (2) undue delay; (3) undue prejudice to the opposing party; and (4) futility. *Foman v. Davis*, 371 U.S. 178, 182 (1962). All of these factors are not weighted equally. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). "Absent prejudice, or a strong showing" of the remaining factors, there exists a "*presumption* under Rule 15(a) in favor of granting leave to amend." *Id*. (emphasis in original).

///

# DISCUSSION

## I. Plaintiffs' Motion to Seal

Here, Plaintiffs seek to file under seal its joint opposition to Defendant's motion for partial summary judgment at pgs. 3:5–7, 9–17, and 14:19–21, and exhibits 1, 3, 4, 5, 8, 10–12, 14, and 15 to the declaration of Ahmed S. Diab. (Doc. No. 119-1 at 3.) In opposition, Defendant asserts that only Exhibit 8 and paragraph 26 of Exhibit 14 should be redacted as they contain private medical information. (Doc. No. 127 at 3.) In its reply brief, Plaintiffs agreed with Defendant's opposition and thus altered its motion to seal to mirror Defendant's request. (Doc. No. 129 at 2.)

Accordingly, balancing the need for the public's access to information regarding private medical information against Plaintiffs' need for confidentiality weigh strongly in favor of sealing. Accordingly, finding compelling reasons to seal, the Court **GRANTS** Plaintiffs' now unopposed motion to seal Exhibit 8 and Paragraph 26 of Exhibit 14. *See Seals v. Mitchell*, No. CV 04-3764 NJV, 2011 WL 1233650, at *2–5 (N.D. Cal. Mar. 30, 2011).

## II. Plaintiffs' Motion for Leave to Amend

Next, the Court turns to Plaintiffs' motions for leave to amend to file a fourth amended complaint ("FAC") in related case 14-cv-1963 and a third amended complaint ("TAC") in related case 14-cv-2810. (Doc. No. 135-1.) Plaintiffs request this motion pursuant to the Court's order issued on May 16, 2017, (Doc. No. 122), so that they may substitute two deceased Plaintiffs with their respective spouses who will continue to represent their claims regarding the Chariot Fire.[3] (Doc. No. 135-1 at 2–6.)

In support of their motion, Plaintiffs assert that Defendant will not be prejudiced by the amendments as it does not change the nature of the lawsuit, that Defendant has already received discovery responses on behalf of the deceased Plaintiffs, and that Plaintiffs offer

---

[3] The now deceased Individual Plaintiffs are (1) Richard Benker—14-cv-1963; and (2) Floyd Quine—14-cv-2810. (Doc. No. 135-1 at 2–5.)

their FAC and TAC in good faith and without undue delay. (*Id*. at 6.) In response, Defendant filed a statement of non-opposition on June 29, 2017. (Doc. No. 137.)

Based on the *Foman* factors discussed *supra* p. 5, the Court finds no evidence that this motion is meant to delay the case; thus there is no impression of bad faith. *See Abels v. JBC Legal Grp., P.C.*, 229 F.R.D. 152, 156 (N.D. Cal. 2005) (holding that bad faith is evident when amendment is introduced solely for delay or improper purpose). Additionally, Defendant's will not be prejudiced by this amendment as the substance of the complaints will not be changed. Furthermore, Plaintiffs did not delay in bringing this motion as they filed it within the thirty day deadline set by Magistrate Judge Karen Crawford. (Doc. No. 122.) In sum, finding that this motion is unopposed and that the *Foman* factors weigh in favor of amendment, the Court **GRANTS** Plaintiffs' request for leave to file amended complaints in related case numbers 14-cv-1963 and 14-cv-2810.

**III. Motion for Partial Summary Judgment**

Defendant argues that partial summary judgment must be entered in its favor and against Plaintiffs on each of their claims for loss or damage to the Authorized Improvements. (*See generally* Doc. No. 110-1.) To support this finding, Defendant contends that under federal law, the Risk of Loss Clause shifts all risk of loss to the Authorized Improvements onto Plaintiffs, including loss caused by a person's negligence. (*Id*. at 15.)

Plaintiffs counter that California law and not federal law applies to the instant matter and that under California Law, the Risk of Loss Clause does not release Defendant from liability. (Doc. No. 119-3 at 10–21.) Additionally, Plaintiffs contend that even under federal law, there exists genuine issues of material fact as to the terms and scope of the Term Permits. (*Id*. at 22–25.) In its separate opposition, Federal Insurance argues that the indemnity language within the Term Permit does not limit indemnity to Defendant and that the SUP does not prevent Federal Insurance from asserting subrogation rights against Defendant. (Doc. No. 118 at 7–10.)

///

7

A.  Plaintiffs' Objections

The Court first turns to Plaintiffs' objections to the evidence attached as exhibits to Defendant's notice of lodgment. (Doc. No. 119-3 at 25.) Plaintiffs contend that per Federal Rule of Evidence 901, Defendant has failed to authenticate or identify the evidence and that the thirty-two exhibits are improper hearsay and lack foundation. (*Id.*)

After reviewing the arguments presented by both parties and the exhibits at issue, the Court finds Plaintiffs' arguments curious as most of the exhibits they object to are documents that they have already authenticated to support their joint opposition. (*Compare* Pls. Ex. 1, Doc. No. 120-1 at 7–13, *with* Def.'s Ex. A, Doc. No. 110-3 at 2–10.) Specifically, the deposition transcripts of Paul Marks, Michael and Patricia McComas, Nancy Delfo, Devin Breise, and Jesse Capps offered initially by Defendant are also offered by Plaintiffs. (*Compare* Pls. Ex. 24, Doc. No. 120-1 at 328, *with* Def. Ex. I, Doc. No. 110-11 at 2.) Accordingly, finding that Defendant has provided the declaration of Ms. Church to authenticate the exhibits "through personal knowledge,"[4] *Orr v. Bank of Am.*, 285 F.3d 764, 773–74 (9th Cir. 2002), and that a majority of the exhibits have already been authenticated by Plaintiffs, the Court **DENIES** Plaintiffs' objections.[5] *See id.* (holding that "when a document has been authenticated by a party, the requirement of authenticity is satisfied as to that document with regards to all parties . . . .").

B.  Defendant's Objections

Next, turning to Defendant's objections, it objects to Plaintiffs' exhibits 3–4, 6, 8–11, and 13–14. (Doc. No. 126 at 20.) Defendant asserts that these exhibits are brought

---

[4] Exhibits are sufficiently authenticated through "declarations submitted by [] attorneys, who had personal knowledge of how [they] obtained the exhibits, how they had been identified, who had identified them, and their status as true and correct copies of the 'originals . . . .'" *Greenspan v. LADT, LLC*, 191 Cal. App. 4th 486, 523 (2010).

[5] Plaintiffs and Defendant both offer the Al Bahr Permit, the Recreation Permits, and the declarations of Carol Dean, Nancy Delfo, Jack Capps, Jessie Capps, Devin Breise, Michael McComas, Patricia McComas, Julie Halliday, and Paul Marks in support and opposition of the instant motion. (Doc. No. 110-2 at 2–3; Doc. No. 119-4 at 2–4.)

solely as evidence to support Plaintiffs' redundant and immaterial arguments regarding the merit of their underlying claims and thus should be stricken or disregarded. (*Id.* at 20–21.)

Rule 12(f) of the Federal Rules of Civil Procedure states that a district court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010 (quoting Fed. R. Civ. P. 12(f)).

After a careful review of Plaintiffs' exhibits, the Court finds no reason to strike them. Here, exhibits 3, 4, 6, and 13, relate directly to Plaintiffs' arguments in opposition of the instant motion. Moreover, though exhibits 8–11 relate to the alleged causes of the Chariot Fire and exhibit 14 is an interview with Jason Peters, they are neither impertinent, *see In re 2TheMart.com, Inc. Sec. Litig.*, 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000) ("Allegations are impertinent if they are not responsive to the issues that arise in the action . . . ."), nor scandalous matters. *Id.* ("Scandalous includes allegations that cast a cruelly derogatory light on a party or other person.") (citation omitted). Instead, they are exhibits relevant to providing a background to the case as a whole. Accordingly, finding that these exhibits do not fall into any category that warrants a motion to strike, and finding no reason to disregard them, the Court **DENIES** Defendant's objections to Plaintiffs' exhibits.[6] *See LeDuc v. Kentucky Cent. Life Ins. Co.*, 814 F. Supp. 820, 830 (N.D. Cal. 1992) (holding that motions to strike are not generally granted unless "it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation").

///

///

---

[6] The Court notes that these objections were raised for the first time in Defendant's reply brief. However, the Court may properly consider evidence and arguments submitted with a reply that is responsive to points raised in the non-moving party's opposition. *See United States v. Taibi*, No. 10-CV-2250 JLS, 2012 WL 553143, at *4 (S.D. Cal. Feb. 21, 2012) ("[B]ecause the[] documents respond directly to Defendant's allegations made in his opposition brief, the Court finds it may properly consider this rebuttal evidence even though it was offered for the first time in Plaintiff's reply brief.") (citation omitted).

9

C. Federal Law Governs the Interpretation of the Term Permits

As a threshold matter, the Court will first analyze the parties' dispute over whether California or federal law governs the interpretation and scope of the Term Permits. (Doc. No. 110-1 at 13–14; Doc. No. 119-3 at 10–12.) Defendant asserts that "[f]ederal law governs the interpretation of a contract to which the United States is a party." (Doc. No. 110-1 at 13 (citing *U.S. v. Seckinger*, 397 U.S. 203, 209 (1970)). Plaintiffs opine in opposition that per the holding in *Air Transport Assoc., Inc. v. United States*, 221 F.2d 467 (9th Cir. 1955), actions brought under the Federal Tort Claims Act ("FTCA") adopt the law of the place where an accident occurs as the law in accordance with which liability is to be determined. (Doc. No. 119-3 at 10.) Accordingly, as the Chariot Fire occurred in California, Plaintiffs argue that California law applies to the present matter. (*Id.*) After a careful analysis of the moving papers and the applicable law, the Court agrees with Defendant.

The downfall of Plaintiffs' contentions is that its use of *Air Transport* is misplaced. In *Air Transport*, the action arose under the FTCA for damages to an airplane resulting from the negligent operation of an airfield. *Air Transport Assoc.*, 221 F.2d at 469. The district court found that the United States was negligent, however it entered judgment for it finding that the provisions of their agreement, including an exculpatory clause barred plaintiff's claim. *Id*. On appeal, the ninth circuit held that the FTCA "specifically adopts the law of the place where an accident occurs as the law in accordance with which liability is to be determined." *Id*. at 471. Thus, finding that the agreement was executed in Seattle, Washington and that Washington law deemed an attempted release from future liability invalid as against public policy, the Ninth Circuit reversed and remanded to the district court with directions that judgment be entered for Air Transport. *Id*. at 472–73.

Here, unlike *Air Transport*, which dealt with a contract between a business and an air force base, at issue in the instant action is a federal term permit issued by the United States Department of Agriculture Forest Service. (Diab. Decl. Ex. 1, Doc. No. 120-1 at 7.) Moreover, it is important to note that the court in *Air Transport* was not presented with the

issue of whether federal or state law would apply to the case. Finally, *Air Transport* was distinguished by *Schwarder v. United States*, 974 F.2d 1118 (9th Cir. 1992). In *Schwarder*, the ninth circuit held that *Air Transport* and its main holding did not control its decision because "the release[] in [Air Transport was] not obtained pursuant to a specific federal statutory provision." *Id.* at 1124. The Court highlights that in the present matter, the Term Permits were issued pursuant to a specific statutory authority. Specifically, each of the Term Permits state that the "permit is issued pursuant to the Act of March 4, 1915, 16 U.S.C. 497, 36 CFR Part 251, Subpart B . . . ." (Doc. No. 110-4 at 2.) In sum, the Court finds Plaintiffs' case law unpersuasive in supporting the idea that California law applies in determining the present motion.

By contrast, the case law provided by Defendant leaves little doubt that federal law applies. Courts have "consistently held that federal law governs questions involving the rights of the United States arising under nationwide federal programs." *United States v. Kimbell Foods Inc.*, 440 U.S. 715, 726 (1979); *see also Nat. Res. Def. Council v. Kempthorne*, 621 F. Supp. 2d 954, 978–79 (E.D. Cal. 2009) (same). This principle is in line with the "long established policy that government contracts are to be given a uniform interpretation and application under federal law, rather than being given different interpretations and applications depending upon the vagaries of the laws of fifty different states."[7] *Woodbury v. United States*, 313 F.2d 291, 295 (9th Cir. 1963). Accordingly, as the Shrine Community was located in a national forest pursuant to Term Permits issued by the United States Department of Agriculture Forest Service, federal law applies to the instant matter. Consequently, the remainder of Defendant's motion will be analyzed under

---

[7] The Court notes that the Term Permits state that they are "federal licenses." (Doc. No. 110-4 at 3.) However, Term Permits issued by a governmental agency that are federal licenses have been held to be contracts. *King v. United States*, 301 F.3d 1270, 1276 (10th Cir. 2002); *see also Or. Nat. Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 978–80 (9th Cir. 2006) (holding that the Federal Land Policy and Management Act of 1976 authorizes the Forest Service to allow livestock grazing on national forest land through permits which grants a license to graze).

the lens of federal law.

### D. Under Federal Law the Risk of Loss Clause in the Term Permits Bar Plaintiffs' Claims Related to the Authorized Improvements

Next, turning to the merits of Defendant's motion, Defendant argues that partial summary judgment in its favor is warranted because under federal law (1) given the Term Permits their plain meaning Plaintiffs explicitly agreed to bear all risk of loss to the Authorized Improvements, regardless of how the loss was caused; and (2) pursuant to *Sander v. Alexander Richardson Invs.*, 334 F.3d 712 (8th Cir. 2003), the Risk of Loss Clause in the Term Permits unambiguously included loss caused by a person's negligence. (Doc. No. 110-1 at 14–21.) After a careful analysis of the exhibits, arguments, and applicable law, the Court finds that Defendant has satisfied its initial burden of demonstrating the absence of a genuine issue of material fact. *Matsushita*, 475 U.S. at 585 n.10.

When interpreting a contract pursuant to federal law, a court looks to "general principles for interpreting contracts." *Klamath Water Users Protective Ass'n*, 204 F.3d at 1210. "A written contract must be read as a whole and every part interpreted with reference to the whole, with preference given to reasonable interpretations." *Id*. Moreover, courts must, if possible, interpret contracts "so as to avoid internal conflict." *Trident Ctr. v. Conn. Gen. Life Ins. Co.*, 847 F.2d 564, 566 (9th Cir. 1988). Furthermore, a contract's language is ambiguous if "reasonable people could find its terms susceptible to more than one interpretation." *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1081 (9th Cir. 2009).

The Court first turns to the plain meaning of the word "all." *See Leicht v. Bateman Eichler, Hill Richards, Inc.*, 848 F.2d 130, 133 (9th Cir. 1988) (holding that whenever possible, the plain language of the contract should always be considered first); *see also Textron Defense Sys. v. Widnall*, 143 F.3d 1465, 1469 (Fed. Cir. 1998). The Risk of Loss Clause plainly states that "[t]he holder assumes <u>all</u> risk of loss to the authorized improvements." (Doc. No. 110-4 at 4 (emphasis added).) "All" is defined by the Merriam-Webster dictionary as "the whole amount, quantity, or extent of," "every," and "any

whatever." *All*, Merriam-Webster, http://www.merriam-webster.com/dictionary/All (last visited August 2, 2017). Similarly, the English Oxford Dictionary defines "all" as "[u]sed to refer to the whole quantity or extent of a particular group or thing." *All*, English Oxford Living Dictionaries, http://www.en.oxforddictionaries.com/definition/all (last visited August 3, 2017). Based on these plain definitions, the Court finds that the Risk of Loss Clause unambiguously releases Defendant from liability to the Authorized Improvements stemming from any situation, including negligence.

Moreover, after exhaustively researching the cases provided by Defendant, as well as cases from this district and others, the Court finds that "all" has been determined to mean "all" within the confines of the law. *See Knott v. McDonald's Corp.*, 147 F.3d 1065, 1067 (9th Cir. 1998) ("'[A]ll' means all."); *Hertel v. Bank of Am. N.A.*, 897 F. Supp. 2d 579, 582 (W.D. Mich. 2012) ("'All' is an inclusive adjective that does not leave room for unmentioned exceptions."); *Kennedy v. United States*, Civil Case No. 07CV1996, 2008 WL 2909872, at *1 (S.D. Cal. July 24, 2008) ("'All' means 'all.'"); *U.S. Bank Nat. Ass'n v. Ho'Olehua Housing, LP*, Civ. No. 12-00478 BMK, 2013 WL 3947759, at *4 (Haw. July 30, 2013) ("'all' unambiguously 'means all.'" (citing *City of Spokane, Wash. v. Fed. Nat'l Mortgage Ass'n*, No. CV-13-0020-LRS, 2013 WL 3288413, at *2 (E.D. Wash. June 28, 2013) ("The ordinary meaning of 'all' is 'the whole of,' 'every, all kinds, all sorts,' and 'any whatever.'")); *Forest Oil Corp. v. Union Oil Co. of Cal.*, Case No. A05-0078 CV (RRB), 2008 WL 11336276, at *4 (D. Alaska Aug. 28, 2008) (same).

Further, the Court finds the Eighth Circuit case provided by Defendant to be instructive in the present matter. In *Sander v. Alexander Richardson Invs.*, 334 F.3d 712 (8th Cir. 2003), boat owners brought an action against a marina for destruction of their boats, which occurred when a boat caught fire after the marina's maintenance worker allegedly installed a fuel pump improperly. *Id*. at 713. The yacht club defended against the boat owners in district court asserting that the exculpatory clause printed on the back of each boat owner's slip agreement exonerated it from any liability. *Id*. at 714. The exculpatory clause stated that "the TENANT RELEASES AND DISCHARGES THE

13

LANDLORD from any and all liability for loss, injury (including death), or damages to person or property . . . ." *Id*. (emphasis added). Initially, the district court found for the boat owners. *Id*. However, on review by the court of appeals, the court found that the clause releasing the yacht club from "any and all liability . . . unambiguously released it from liability stemming from its own negligence." *Id*. at 716.

Based on the foregoing, the Court finds that Defendant has presented evidence that satisfies its burden of demonstrating that it is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322–23. Thus, in opposition, Plaintiffs must now designate "specific facts showing that there is a genuine issue for trial" so as to defeat Defendant's motion for partial summary judgment. *Id*. at 324 (quoting Fed. R. Civ. P. 56(e).) Here, after a thorough and exhaustive review of Plaintiffs' exhibits and arguments, and drawing all inferences from the underlying facts in Plaintiffs' favor, the Court finds that Plaintiffs have failed to satisfy this burden. *See Matsushita*, 475 U.S. at 587.

To dispute Defendant's motion for partial summary judgment, Plaintiffs posit that genuine issues of material fact exist as to the ambiguity of the terms and scope of the Term Permits because (1) Plaintiffs intended and assumed that they entered into the terms of the Term Permit only with the Forest Service and not with the United States; (2) that they reasonably believed that reference to the United States in the Term Permits was only due to the fact that the Forest Service is an agency of the United States; and (3) Defendant's case law is inapplicable and distinguishable to the present matter.[8] (Doc. No. 119-3 at 22–25.)

First, the Court finds Plaintiffs' belief that the United States was not a party to the Term Permits to be unreasonable and meritless. Throughout the Term Permits, mention of the United States is made no less than ten times. (*See generally* Doc. No. 110-4.) Moreover,

---

[8] Individual Plaintiffs each assert that the Term Permits were signed with the understanding that the only parties to the permit were Al Bahr and the U.S. Forest Service. (*See* Diab Decl. Ex. 16 ¶¶ 5, 7; Ex. 17 ¶¶ 4, 5; Ex. 18 ¶¶ 4, 5; Ex. 19 ¶¶ 4, 5; Ex. 20 ¶¶ 4, 5; Ex. 21 ¶¶ 4, 5; Ex. 22 ¶¶ 4, 5; Ex. 23 ¶¶ 4, 5, Doc. No. 119-3.)

the Term Permits specifically address the United States as a party to the contract. For example under section IV. B "Valid Outstanding Rights" the Term Permit states that the "Valid outstanding rights include those derived from mining and mineral leasing laws of the United States. <u>The United States</u> is not liable to the holder for the exercise of any such right." (Doc. No. 110-4 at 4; Diab Decl. at 127 (emphasis added).) Additionally, one of the sections is titled "Damage to the United States Property." (Doc. No. 110-4 at 4.)

Next, the Court notes that Plaintiffs' belief that they entered into the Term Permits only with the Forest Service is far-fetched. (Doc. No. 119-3 at 23.) As Plaintiffs' own exhibit demonstrates, the Forest Service is an agency of the U.S. Department of Agriculture. (Diab. Decl. at 72–73.) Cogently, it cannot be disputed that the U.S. Department of Agriculture on its own is another agency working for and on behalf of the United States. *See Cannon v. United States*, 84 F. Supp. 820, 822 (N.D. Cal. 1949) ("There is no question but that the Government of the United States acts only through its agents with power delegated and defined by statute or regulation, which all who deal with such persons are presumed to know."); *see also Hawkins v. United States*, 96 U.S. 689, 691 (1877) (holding that the United States can be bound only by agents acting within the scope of the authority delegated to them). Thus, the Court finds it illogical to believe that Plaintiffs were under the impression that the United States was not a party to the Term Permit.

Next, the Court disagrees with Plaintiffs that *Sander* is unpersuasive. Plaintiffs highlight that *Sander* is inapposite to the present matter as it was based on maritime law. (Doc. No. 119-3 at 24.) However, it cannot be reasonably disputed that maritime law is based upon federal common law. *See e.g. Exxon Shipping Co. v. Baker*, 554 U.S. 471, 483 (2008) ("Because the contracts' choice of law clause provided that federal maritime law would govern, we apply federal common law in interpreting the contracts"); *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 200 (1996) (stating that general maritime law is a "species of judge-made federal common law"); *Flores v. Am. Seafoods Co.*, 335 F.3d 904, 910 (9th Cir. 2003).

Likewise, Plaintiffs' second assertion that *Sander* is factually distinguishable is equally unhelpful. Plaintiffs argue that in *Sander* the language in the release of liability released the marina from the negligence of its own employees. (Doc. No. 119-3 at 24.) Whereas in the instant matter, Plaintiffs contend that Jason Peters, the individual who allegedly started the Chariot Fire, was an employee of the BLM, who is a non-party to the Term Permits. (*Id.*) However, Plaintiffs again seem to conflate the agencies and departments of the government that are at play in this case. Here, Defendant Jason Peters was acting "within the scope of his employment as an employee of the United States Department of the Interior, Bureau of Land Management . . . ." (Diab Decl. at 117–18.) As discussed above, the various U.S. Departments are agencies of the United States. Thus, it can be logically inferred that the BLM is an agency working on behalf of the United States and is thus not a non-party.

Moreover, Plaintiffs seem to assert that as Mr. Peters was driving in a canyon miles away from the Shrine Community that *Sander* is inapplicable. (Doc. No. 119-3 at 23–25.) However, this argument is puzzling as the court in *Sander* never focused on the distance the allegedly negligent action would need to take place to be applicable under the release of liability. Put simply, the court in *Sander* plainly held that the exculpatory clause contained in the slip rental agreements was valid and enforceable. *Sander*, 334 F.3d at 721. Thus, the risk of loss to the boat owners, included loss arising from negligence of the marina employee. *Id.*

Based on the foregoing, the Court finds that Plaintiffs have not demonstrated an ambiguity in the scope and terms of the Term Permits. *See Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient[.]"). Thus, Plaintiffs have failed to satisfy its burden to prove that a genuine issue of material fact exists for trial.[9] Accordingly, the Court **GRANTS** Defendant's

---

[9] The Court notes that as it finds the Term Permits to be unambiguous, it will not consider extrinsic evidence. *Zenger-Miller, Inc. v. Training Team, GmbH*, 757 F. Supp. 1062, 1067

motion for partial summary judgment. Plaintiffs are excluded from recovering any loss or damage to the Authorized Improvements listed on each of the Term Permits.[10]

### E. Federal Insurance's Opposition to Defendant's Motion for Summary Judgment

The Court now turns to Federal Insurance's arguments in opposition of Defendant's motion for partial summary judgment. Like Plaintiffs, to defeat Defendant's motion, Federal Insurance must set forth facts that show that a genuine issue of a disputed fact remains. *Celotex Corp.*, 477 U.S. at 330.

Federal Insurance argues that the identical Risk of Loss Clause in the SUP does not hold Defendant harmless from damages caused by its own negligence. (Doc. No. 118 at 7.) Moreover, Federal Insurance states that its permit contains an indemnity clause that expressly limits indemnity to the Defendant for an act and omission of the Sierra Club only. (*Id*. at 8.)

First, as discussed *supra* pp. 10–12, the Court disagrees with Federal Insurance that California law applies to the instant matter. *See Crocker-Citizens Nat. Bank v. U.S.*, 320 F. Supp. 673, 675 (E.D. Cal. 1970) ("The contract was formed under the authority of federal law . . . and the need for uniform treatment of federal contracts is apparent. State law,

---

(N.D. Cal. 1991) ("Under the federal parol evidence standard, extrinsic evidence is inadmissible to interpret or vary the terms of an unambiguous, fully integrated written contract.") (citation omitted); *see also United States v. Nunez*, 223 F.3d 956, 958 (9th Cir. 2000) ("Under the parol evidence rule, a court looks to, and enforces, the plain language of a contract and does not look to extrinsic evidence to interpret the terms of an unambiguous written instrument.") (internal citation and quotation omitted).

[10] The authorized improvements in the Al Bahr Permit include (1) lodge; (2) caretaker cabin; (3) well and 400 feet of pipeline; (4) 60,000 gallon water storage tank; (5) camp and playgrounds; (6) 100 permanent trailer pads; (7) 28 transient trailer pads; (8) 2 dormitories; (9) five rental cabins; (10) dining hall; and (11) includes associated parking areas, roadways, waterlines, septic, gas, power, and telephone facilities. (Doc. No. 110-3 at 2.) The thirteen recreation permits included: Lots 1–17 on the Shrine Community tract, which included combinations of cabins, garages, sheds and/or deck structures. (Doc. No. 110-4 at 2, 12, 22, 32, 42, 52, 62, 72, 82, 92, 102, 112, 122.)

therefore, is wholly inappropriate."). Additionally, this Order concludes that the Risk of Loss Clause present in all of the Term Permits includes risk of loss to the Authorized Improvements in all forms. Thus, Federal Insurance's arguments that the Risk of Loss Clause does not include negligence is erroneous.

Second, unfortunately for Federal Insurance, its entire opposition is based on California law. As the Court has already determined that federal law applies, the remainder of Federal Insurance's arguments are unpersuasive. Accordingly, as Federal Insurance has failed to satisfy its burden to demonstrate that genuine issues of material fact exist under federal law, the Court **GRANTS** Defendant's motion for partial summary judgment as to Federal Insurance.[11]

## **CONCLUSION**

Based on the foregoing, Defendant's motion for partial summary judgment as to Plaintiffs' claims and requests for damages that stem from loss to the Authorized Improvements is **GRANTED**.[12] Additionally, Plaintiffs' motion to seal and motion for leave to amend are also **GRANTED**.

**IT IS SO ORDERED**.

Dated: August 8, 2017

Hon. Anthony J. Battaglia
United States District Judge

---

[11] The Sierra Club Permit improvements include (1) main lodge and dormitory cabin; (2) dormitory cabin with 20' x 36' open wood deck; (3) 1000 feet of water pipeline; (4) driveway and parking area; (5) 30,000 gallon water storage tank; and (6) septic system and leach lines. (Doc. No. 110-5 at 2.)

[12] Defendant moves for judgment on all of Plaintiffs' claims relating to loss to the Authorized Improvements. (Doc. No. 110-1 at 21.) Specifically, Defendant does not move for judgment on damages that do not stem from loss to the Authorized Improvements such as loss of personal property. (*Id*. at 22.)